STATE AND CITY OF CHARLOTTE v. LEWIS RUSSELL.

(Filed 19 November, 1913.)

1. **Spirituous Liquor — Prospective Laws—Conflict—Interpretation of Statutes.**

Public Laws of 1913, ch. 44, called the "Search and Seizure" law, ratified 3 March, is by its provisions effective 1 April of the same year, and having a prospective effect, is not in conflict, as to acts committed before then, with chapters 819 and 992, Laws 1907, making the possession by one person in Mecklenburg County of more than 2½ gallons of spirituous liquor *prima facie* evidence of the unlawful intent to sell. *S. v. Perkins*, 141 N. C., 797.

2. **Spirituous Liquors—Co-ordinate Branches of Government—Presumptions of Innocence—Constitutional Law—Statutes.**

The provision of chapters 819 and 992, Laws 1907, making the possession by one person of more than 2½ gallons of spirituous liquor in Mecklenburg County *prima facie* evidence of an unlawful intent to sell, is not an unconstitutional assumption by the Legislature of the judicial power, nor does it deprive the citizen of the common-law presumption of innocence, or of the benefit of the doctrine of reasonable doubt. *S. v. Barrett*, 138 N. C., 630; *S. v. Wilkerson, ante*, 431.

3. **Spirituous Liquors—Burden of Proof—Reasonable Doubt—Prima Facie Case—Instructions.**

Where the statute makes the possession by one person of a certain quantity of spirituous liquor *prima facie* evidence of an unlawful intent to sell, the burden of the issue remains on the State to show the guilt, as charged in the indictment, beyond a reasonable doubt; and when the *prima facie* case has been established, under the provision of the statute, it does not forestall the verdict, for it only means that as evidence it is suffi-

cient to establish the ultimate fact of guilt, and the jury may convict if they find that it is not explained or rebutted. The presumption of innocence is still with the prisoner, and the burden continues to rest upon the State to show guilt beyond a. reasonable doubt. The charge of the court in this case is approved. *S. v. Wilkerson, ante, 431.*

CLARK, C. J., concurs in the result.

APPEAL by defendant from *Webb, J.,* at April Term, 1913, of MECKLENBURG.

The defendant was charged before J. L. Brown, a justice of the peace, upon the affidavit of a police officer, with the crime of having in his possession, on 18 January, 1913, more than 2½ gallons of intoxicating liquor for the purpose of sale, and with keeping intoxicating liquor for the same purpose. He was arrested under the justice's warrant, which was returnable before the recorder of the city of Charlotte, before whom he was tried and convicted. Appealing to the Superior Court from this judgment, he was tried before Hon. James L. Webb, and a jury, and having been again convicted, he appealed from the judgment to this Court.

*Attorney-General Bickett for plaintiff.*
*Barry & Henry for defendant.*

WALKER, J., after stating the case: The prisoner's counsel has raised several questions, by a motion to quash the proceeding, by demurrer to the evidence, and by prayers for instruction.

First. The indictment is under the Public Laws of 1907, chs. 819 and 992, which together prohibit the keeping for sale any spirituous liquor in Mecklenburg County, with certain exceptions not applicable to this case, and provide that the possession of more than 2½ gallons of such liquor shall be *prima facie* evidence of the unlawful intent to sell. Section 1 of chapter 819 of the Laws of 1907 seems to be substantially the same as section 2 of chapter 992 of the Laws of 1907.

The prisoner's counsel contends that these laws, so far as pertinent to this case, are repealed by what is sometimes called the "Search and Seizure" law (Public Laws of 1913, ch. 44).

There are two conclusive answers to this contention:

1. By the decision in *S. v. Perkins,* 141 N. C., 797, we held that a statute (Laws of 1905, ch. 497) prohibiting the sale of spirituous liquor in Union County and repealing all laws in conflict with it, and further providing that it should take effect on 1 June, 1905, did not work a repeal of the act of 1903, ch. 434, which also prohibited the keeping for sale spirituous liquors in that county and made the possession of more than one quart of such liquor *prima facie* evidence of the unlawful act. The purport of the ruling was that the two acts were not necessarily in conflict, but could easily be reconciled by confining the earlier one to offenses committed before the passage of the later one, and the latter to offenses committed after it took effect on 1 June, 1905; the legal effect of which was to hold that the last act was prospective in its operation. That case and this are practically alike in their facts and the legal questions involved, and, in this respect, the decision must be the same, except it may be said that the language of the act of 1913 more strongly favors the continued operation of acts of 1907, chs. 819 and 992, relating to Mecklenburg County, than did the act of 1905 in respect to the former act of 1903, relating to Union County. The *Perkins case* stands plainly in the way of this contention and meets it at every point.

2. The other answer is, that the act of 1913, by sections 8 and 9, distinctly excepts cases of this class, where the offense was committed before its enactment, from its operation. Section 8 provides: "That all laws or parts of laws in conflict with this act be and the same are hereby, to the extent of such conflict, repealed: *Provided, however,* that nothing in this act shall operate to repeal any of the local or special acts of the General Assembly of North Carolina prohibiting the manufacture or sale or other disposition of any of the liquors mentioned in this act, or any laws for the enforcement of the same, but all such acts shall continue in full force and effect and in concurrence herewith, and indictment or prosecution may be had either under this act or any special or local act relating to the same."

Second. The prisoner's counsel then fall back upon the posi-

tion, which they defend with an able and learned argument, that the acts of 1907, chs. 819 and 992, making the bare possession of 2½ gallons of liquor *prima facie* evidence that it is kept for sale, is invalid, as in violation of the constitutional rights of the citizen, for two reasons: (*a*) It is an assumption by the Legislature of judicial power, and, therefore, an invasion by it of the province assigned to another and coördinate branch or department of the Government. (*b*) It deprives the prisoner of the common-law presumption of innocence and of the full benefit of the doctrine of reasonable doubt; and, besides, it casts upon him the burden of showing his innocence.

Without admitting that the act has the effect, in law, thus imputed to it, we must decline to enter upon a discussion of the questions thus pressed upon our attention, and for the very good reason that we have squarely decided against a similar contention in *S. v. Barrett,* 138 N. C., 630, and again in *S. v. Wilkerson, ante,* 431. In both cases, after an exhaustive consideration of the matter, we have deliberately decided that a like provision of the law (in the acts relating to Union County, and in the law of general application in the State, passed at the last regular session of the General Assembly, Laws of 1913, ch. 44, the "Search and Seizure" law) are constitutional and valid, both as to their criminal feature and the rule of evidence established by them. In the *Barrett case* we upheld the Union County law, and in the *Wilkerson case* we sustained the "Search and Seizure" law. The legal effect of those two decisions is so plain and unmistakable that there can be no fair or reasonable doubt of it. So far as this Court is concerned, they are valid laws of the State and will be enforced strictly and rigidly, according to the intention of the Legislature in passing them.

The prisoner reserved certain exceptions to the instructions of the court to the jury; but we may say with absolute correctness and propriety, that the law as declared by this Court in *Barrett's case* and *Wilkerson's case* (not decided at the time) could not have been more clearly stated, or with greater precision and conciseness, than was done in the charge of Judge Webb in response to the prisoner's request, which was as fol-

lows: "That notwithstanding all the laws prohibiting the keeping in possession of or sale of spirituous, vinous, or malt liquors or intoxicating bitters, it is, nevertheless, lawful for any one to keep, or have on hand, any quantity of such liquors or to have same under his control, provided he has same, or controls same, for his own use, or to give to others. And that this is true, whether such liquors so kept for his own use or for transfer by gift are bought in this State or shipped into from some other State. The statutory presumption in this case, to the effect that keeping or having on hand or under one's control more than 2½ gallons of intoxicating liquor, shall be *prima facie* evidence of an intent to sell same contrary to law, is not binding upon the jury, though the defendant does not see fit to introduce any testimony or to go on the stand as a witness for himself. The jury is still at liberty to acquit the defendant, if they find his guilt is not proved beyond a reasonable doubt." The court also, in its general charge, explained to the jury the nature and legal force of *prima facie* evidence, and distinctly told them that neither upon such evidence, by itself or in connection with other circumstances that strengthened it, could they convict the defendant, unless they were satisfied beyond a reasonable doubt of his guilt. This was the proper instruction, as the Legislature has not, for a very good reason, attempted to make the bare possession of liquor conclusive as evidence of the purpose unlawfully to sell it, but only as evidence fit to be considered by the jury upon the question of guilt, and sufficient to convict, even standing alone and unsupported by any other circumstance. The judge did not shift the burden to the defendant, as was done in *S. v. Wilkerson*, but kept it where it belonged, upon the State. We said in *Wilkerson's case:* "It is not made unlawful for a person to have more than one gallon of spirituous liquor in his possession, but it is criminal to have possession of that quantity for the purpose of sale, and while the bare possession of so much may, in itself and as a fact, be innocent, it is yet made *prima facie* evidence of guilt under the statute, as held in *S. v. Barrett,* 138 N. C., 630. But it is only evidence, and while it has the added force or weight of being

*prima facie,* the latter means no more than that it is sufficient for the jury to convict upon it alone and unsupported, if no other proof is offered, but upon the whole evidence, whether consisting of the mere fact of possession or of additional facts, the jury are not bound to convict, but simply may do so if they find, beyond a reasonable doubt, or are fully satisfied that the defendant is guilty. The jury are no more required to convict upon a *prima facie* case than they are to acquit because of the presumption of innocence. They must judge themselves as to the force of the testimony and its sufficiency to produce in their minds a conviction of guilt." The words *"prima facie,"* as used in connection with the force and effect of evidence, means no more than that the latter, on its face or at first view and without contradiction or explanation, tends to prove the fact in issue—not that it does necessarily establish it. Perhaps a more legal definition is, that it is such as is, in judgment of law, sufficient to establish the ultimate fact, and, if not explained or rebutted, remains sufficient for that purpose. It does not, in law, forestall the verdict, but leaves the inference of guilt, as in this case, for the jury to find, after excluding all reasonable doubt.

We have examined the prayers for instruction most carefully, and the charge, and conclude that the judge fairly and fully explained the law to the jury. We said in *Barrett's case:* "This (*prima facie* evidence) neither conclusively determines the guilt or innocence of the party who is accused nor withdraws from the jury the right and duty of passing upon and deciding the issue to be tried. The burden of proof remains continually upon the State to establish the accusation which it makes, as *prima facie* evidence does not change or shift the burden," citing *Com. v. Williams,* 72 Mass. (6 Gray). When proof of a certain fact is made *prima facie* evidence of the main fact to be established, the law does not mean that there is any conclusive presumption of guilt thereby created, but that there is sufficient evidence to go to the jury and upon which they may convict if there is no countervailing testimony. It does not shift the burden of the issues, but the State is still required to prove its case beyond a reasonable doubt. Wig. Ev., sec. 2494 (2); *Womble v. Grocery Co.,* 135 N. C., 474.

Liquor cases are no exception to the rule, which every one will recognize, that trials should be conducted strictly according to the settled principles of the law. A good cause is never aided, but, on the contrary, retarded, by forcing the law to suit our individual conceptions of right and wrong, in an effort to advance it beyond the limit at present fixed by the Legislature. Such a course is not only wrong in itself and unjustifiable, but it would be contrary to the recorded will of the people and the intent of the lawmaking body, which alone is invested with the power of legislation. Its intention should be fully executed, without straining its language to extend it beyond what is authorized by its written words. Parties have the common-law right, which has been guaranteed by our Constitution, to be heard by us impartially and with cold neutrality, so that exact justice may be done within the law. As said by a learned and just judge, in his charge to the jury, which was recently reviewed by us, the safe guide for us is the one laid down by the great Law-giver to the judges of Israel: "Thou shalt do no unrighteousness in judgment. Thou shalt not respect the person of the poor, nor honor the person of the mighty, but in righteousness shalt thou judge thy neighbor." It is not what *we* may think the law should be, but what it is, that furnishes the true rule of procedure, discarding from our minds any mere personal view of the law's policy, and not embodying in the law, for the purpose of enforcing them, our own ideas of right and wrong. If we unsettle the foundations of the law by substituting our own individual opinion of what is right, often biased and prejudiced, for the safer, wiser, and more temperate rule of the law, we will surely bring discredit upon our decisions and justly merit, as we will certainly receive, the condemnation of the people. We cannot, therefore, consider any matters unless based upon the facts and law of the case, instead of our individual notions of justice and expediency. Such action on our part would be a wide departure from the true course which has been set for us by the Constitution and the laws.

S. *v.* RUSSELL.

Even a cursory review of the charge, before examining it more critically, has satisfied us that the prisoner had the full benefit of the doctrine of reasonable doubt and the presumption of innocence, to the extent that he was entitled to it, and also a fair and correct instruction concerning the effect of the possession of liquor as *prima facie* evidence of his keeping it for sale, under the statute.

In conclusion, we hold the act of 1907 valid, as we did the act of 1913, in *S. v. Wilkerson, ante,* 431; and we further decide that the prisoner was tried according to the provisions of the former statute and the general rules of law applicable to the case. His conviction, therefore, must be sustained.

The difference between this case and the *Wilkerson case* is this: In the *Wilkerson case* the judge charged the jury erroneously as to the effect of *prima facie* evidence, and we ordered a new trial. In this case the judge gave a correct charge as to the effect of such evidence, and we affirm the judgment of conviction. In both cases the prohibition act and the "Search and Seizure" act are declared to be valid and enforcible; but we decide that a man charged under either must be tried according to law.

No error.

CLARK, C. J., concurring in the result: I agree with the following definition of *prima facie,* given in the opinion of the Court, that it is "in judgment of law sufficient to establish the ultimate fact, and if not explained or rebutted remains sufficient for that purpose."

I also agree cordially with the statement in the opinion that the Search and Seizure law and the other prohibition statutes "are the laws of this State and should be enforced strictly and rigidly according to the intention of the Legislature in passing them"; and further, that, as is so well said in the opinion, "If we unsettle the foundation of the law by substituting our own individual opinion of what is right, often biased and prejudiced, for the safer, wiser, and more temperate rule of the law, we will surely bring discredit upon our decisions and justly merit, as we will certainly receive, the condemnation of the people."

S. *v.* RUSSELL.

When the Legislature saw fit to make the possession of liquor, more than one gallon in quantity, *prima facie* evidence of an intent to sell, it was acting within its powers, and in ascertaining the meaning of the Legislature we must take it that they meant to use words in their ordinary and general acceptation. The words *"prima facie* evidence*"* are defined in Webster's International Dictionary as meaning "evidence sufficient, in law, to raise a presumption of fact or establish the fact in question, unless rebutted." We must presume that the Legislature had such meaning in mind when such words were used in the statute.

Indeed, the Court in the opinion in this case uses that very definition. Not until very recent years has a different idea been advanced and a distinction between "the burden of the issue" and the "burden of proof" been introduced. Such distinction, it seems to me, is unnecessary (though we have used it more than once) and not easy to be understood by a jury. Such charge has not been required by any statute and is entirely judge-made. To my judgment, it is an unnecessary distinction, calculated to confuse a jury. In view of the better tendency in these days to abolish, and not to create, subtle distinctions, it ought not to be longer recognized. An inadvertent disregard of this distinction by a judge in his charge may sometimes result in the acquittal of a guilty man. But it is hardly conceivable that its use will ever militate to the better ascertainment of the truth, when a *prima facie* case has been established in the manner required by the statute. The facts should be ascertained upon the evidence unhampered by overrefinements in the charge.