A. G. EDWARDS, Appellee, v. THE AMERICAN EXPRESS COMPANY, Appellant.

Conversion: EXPRESS COMPANIES: IDENTIFICATION OF SHIPMENT: DEFENSES. Where the agent of an express company, in attempting to identify and select goods for shipment, at the request of the owner, by mistake takes the property of another and the same is forwarded and lost, the company is liable to the owner in an action for conversion. And it is no defense that the property consisted of a gambling device and therefore of no value which the law recognizes, in the absence of proof as to the manner in which the same was used or that it had been employed in unlawful practices.

*Appeal from Marshall District Court.*—HON. OBED CAS-
WELL, Judge.

THURSDAY, OCTOBER 8, 1903.

THE opinion states the case.—*Affirmed.*

*Binford & Snelling* for appellant.

*J. M. Whittaker* for appellees.

WEAVER, J.—Plaintiff alleges that in the spring of
1901 he was the owner of a certain "musical instrument"
·of the value of $200, at Marshalltown, Iowa, which property
the defendant, by its agents and employes, wrongfully
took and carried away, and has failed to return or account
therefor, and judgment is asked for the damages thus
·occasioned.   The defendant answers that it is engaged in
business as a common carrier, and that at the time men-
tioned in the petition one McArthur caused to be delivered
to defendant at the Tremont Hotel two packages, said to
·contain one slot machine each, and at the direction of said
McArthur defendant transported and delivered the same
to one Schaefer in Chicago, Ill.   It is further averred that
·said packages were received, shipped, and delivered in
good faith, without any notice of the claim of plaintiff to
any of said property, and that such notice was not received
until after the property had passed from defendant's pos-
session, and it was no longer within its power to return
the same to plaintiff.   The district court rendered judg-
ment in plaintiff's favor for the value of the machine, and
defendant appeals.

The presumption which supports the judgment of the
trial court in an action at law requires us to give the ap-
pellee the benefit of the most favorable construction which
can fairly be placed upon the testimony.   The record will
justify the conclusion that at the time in question there

were three slot machines temporarily stored in the base-
ment or baggage room of the hotel, although there is testi-
mony to support a finding that but two of those three
were in this room; the third being in another room on the
same floor.    Two of the instruments belonged to Mc-
Arthur and one to the plaintiff.    On February 21, 1901,.
McArthur, being at, Des Moines, wrote defendant's agent
at Marshalltown:    "Kindly ship to Peter J. Schaefer,.
Chicago, Ill., two slot machines; the one that was returned
from Tama and the other you will find at the Tremont
Hotel."    The reference in this letter to the "one returned
from Tama" appears to have been understood as directing
attention to a machine which had been received for Mc-
Arthur from that place and had been delivered by de-
fendant at the hotel.    On receipt of the letter the agent
gave it to defendant's driver, and directed him to go to
the hotel and get the machines therein called for.    The
driver applied to the landlord or manager of the hotel,.
and, being told that the machines were "down in the
baggage room," went to the place designated, and, find-
ing two slot machines there (and only two, according to
his statement), took them to defendant's office, where
they were billed and shipped to Chicago.    On March 5,.
1901, McArthur, having discovered that one of the
machines shipped to Schaefer belonged to plaintiff, notified
defendant's agent at Marshalltown of the mistake, and
asked to have the right instrument obtained from the
hotel and forwarded to same address, which was done
accordingly.    Plaintiff's machine was never returned.

The appeal is based principally upon the proposition
laid down in Hutchinson on Carriers (2d Ed.) section 115,
to the effect that a common carrier "accepting goods for
carriage in good faith from a person not the owner, but
in apparent control of them, and able immediately to as-
sume the actual custody of them, and after carriage to the
destination delivers them again to such person, is not

liable to the true owner as for conversion." The principle here announced may be conceded to its fullest extent without requiring a reversal of the judgment in this case. Neither the plaintiff nor McArthur, nor any other person having apparent possession or control of this machine, delivered it to the defendant. Its agents—acting, it is true, in entire good faith —undertook, in excess of its ordinary duties as common carrier, to select and identify the machines as called for by McArthur's letter and in so doing unfortunately took one belonging to plaintiff. If A, having a horse feeding in the same pasture or stable with the horse of B, requests a carrier to get his animal, and ship it to another place, and the carrier by mistake takes possession of the animal belonging to B, it would be a hard rule, indeed, which would deny the latter any remedy against the party by whose error or trespass his property has been lost. The mistake in the present case was not chargeable to McArthur, for he did not direct defendant to ship this machine. Neither was it chargeable to the hotel proprietor, who did not attempt to select or point out the machines belonging to McArthur. Still less can it be said that plaintiff himself was in any manner to blame for the confusion by which he has been made to suffer damage. The judgment of the district court has sufficient support in the record.

It should also be said the answer alleges that the machine in controversy was a gambling device, and therefor without any value which the law will recognize. This plea is mentioned in argument, but no reason or authority is urged in its support. The machine is described by the witnesses as a "musical black cat," having "jack pots in it," and is said to be "what is known as a gambling machine." It is also shown to have had at that time a market value of $150 to $200. No fact is stated as to the manner in which the device is used or operated, nor is it shown ever to have been employed in gambling or other

unlawful practices. We know of no law which will justify us in saying the owner of such property is without redress against the person who deprives him of it. A cold chisel may be a burglar's tool, yet has a legitimate use and value; cards and dice are employed in gambling, yet are not denied a place among legitimate merchandise; and, so far as has yet been revealed to the court, there may be some honest and harmless employment for a "musical black cat with jack pots in it."

There appears to be no reversible error in the record, and the judgment of the district court is AFFIRMED.